# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DONTAY DAKWON SANFORD,<br><br>Defendant. | No. CR14-2036<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Vehicle Search . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     B.   Defendant's Statements . . . . . . . . . . . . . . . . . . . 10

VI.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

On the 14th day of October 2014, this matter came on for hearing on the Motion to Suppress (docket number 18) filed by the Defendant on October 2, 2014. The Government was represented by Special Assistant United States Attorney Lisa C.

Williams. Defendant Dontay Dakwon Sanford appeared in person and was represented by his attorney, Anne M. Laverty.

## II. PROCEDURAL HISTORY

On July 23, 2014, Defendant Dontay Dakwon Sanford was charged by Indictment with possession of a firearm and ammunition by a felon. Defendant appeared on September 4 and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on November 3, 2014; however, due to the pending motion to suppress, trial was continued to December 15.

On October 2, 2014, Defendant timely filed the instant motion to suppress. The Government filed its resistance on October 9.

## III. ISSUE PRESENTED

Responding to the scene of a reported threat, Officer Ryan Muhlenbruch ordered Defendant to get out of a parked vehicle. After placing Defendant in handcuffs and putting him in the back of his squad car, Muhlenbruch discovered a handgun under the seat of the parked car where Defendant had been sitting. Defendant asserts that the search of the vehicle was unconstitutional. Defendant also argues that certain incriminating statements made by him while sitting in the squad car "were taken under circumstances violative of his constitutional rights."

## IV. RELEVANT FACTS

During the early morning hours of July 6, 2014, Officers Ryan Muhlenbruch and Dustin Yates of the Waterloo Police Department were on routine patrol, driving separate vehicles. At approximately 1:15 a.m., "dispatch" advised over the radio that an employee at Club 319 had reported that someone at the bar told employees he was "going to do something to someone" when the bar let out. The officers were not given any further information regarding the nature of the threat, but described the area as a "high crime area." According to Muhlenbruch, there had been numerous violent crimes in the area,

including large fights and shootings. Yates testified that Club 319 has a "very high call volume" with "higher risk" calls, such as fights, shootings, and stabbings. Muhlenbruch testified he was concerned there may be a shooting. The subject making the threat was described as a black male with dreadlocks, wearing a white shirt and blue shorts.

Officer Muhlenbruch arrived on the scene first. "Halfway down the block" from Club 319, Muhlenbruch spotted a man matching the subject's description in an alley. Muhlenbruch pulled his squad car into the alley and stopped. Muhlenbruch did not activate his emergency lights or siren. A video taken from the front window of Muhlenbruch's squad car shows a man matching the subject's description walking toward a nearby parked car.[1] The subject, who was later identified as Defendant, was only a few feet from the back of the car when Muhlenbruch stopped.

As Defendant rounded the right rear of the vehicle and headed toward the passenger door, another man, who had been sitting on the driver's side with his feet out the door, exited the vehicle. Officer Muhlenbruch got out of his car and yelled "hey, partner." The man exiting the parked car on the driver's side started to approach Muhlenbruch with his hands up. The video also shows a third man walking nearby and three women approaching the area from the other direction. Defendant did not stop, but got into the parked vehicle. Muhlenbruch testified that before Defendant entered the vehicle, he made "eye contact" with Muhlenbruch. Muhlenbruch conceded that it was "possible" that Defendant did not hear him, but opined it was "not likely." Muhlenbruch ran to the passenger side of the vehicle with a flashlight in his left hand and his right hand on his holster. The other persons in the area (including the man who got out of the driver's side of the parked car) walked away.

Officer Muhlenbruch testified that as he rounded the back of the vehicle and approached the passenger side, Defendant was leaning forward and Muhlenbruch could not

---

[1] The video recording was introduced as Government's Exhibit 1.

3

see Defendant's hands. Defendant was moving around in the car and appeared to be reaching for the console with his left hand, with his right hand down near the floor. Muhlenbruch testified that he believed Defendant was concealing something under the front passenger seat. At that point, Muhlenbruch drew his firearm and instructed Defendant to "let me see your hands." Defendant complied. Muhlenbruch instructed Defendant to exit the car and put his hands on top of the car. Defendant complied.

According to Officer Muhlenbruch, when he approached the vehicle and instructed the occupant to show his hands, Defendant looked his way, and Muhlenbruch immediately recognized him as Dontay Sanford. Muhlenbruch had "previous dealings" with Defendant and knew of Defendant's prior criminal history, including convictions for carrying weapons. Muhlenbruch also knew Defendant was "involved" in an earlier homicide, which resulted in a conviction for burglary in the first degree.[2]

At about that time, Officer Yates arrived. Officer Muhlenbruch then holstered his weapon and placed Defendant in handcuffs. Two women approached and asked why Defendant was being arrested. Muhlenbruch told them to "step back" and Yates backed them away from the scene. Muhlenbruch patted Defendant down for weapons, but found none. Defendant repeatedly told Muhlenbruch "I got nothin'," and Muhlenbruch responded "that's because you stuffed it in the car." Muhlenbruch then placed Defendant in the back of his squad car. Muhlenbruch testified Defendant was not under arrest at that time.

Officer Muhlenbruch then returned to the car and called in the license plate. It was discovered that the car was a rental vehicle. Muhlenbruch then searched the passenger compartment and found a loaded Ruger .357 revolver under the front passenger seat where Defendant had been sitting. At that point, Muhlenbruch returned to his squad car and read

---

[2] According to Officer Muhlenbruch, Defendant opened a car door and held it while another person entered the car and assaulted a woman, resulting in her death.

4

Defendant his *Miranda* rights. When asked if he wanted to talk, Defendant said "I ain't talking to you about shit."

While the scene was being processed, Officer Muhlenbruch's in-car audio recording system captured Defendant's voice making several phone calls to "B." Defendant made several potentially incriminating statements, including "they got me, I'm done, I'm all the way gone."[3]

## V. DISCUSSION

In his motion to suppress, Defendant asserts that "officers did not have probable cause to detain him nor to search the vehicle." Furthermore, Defendant argues that "his statements made while in custody, including in the patrol car, were taken under circumstances violative of his constitutional rights." Defendant did not file a supporting brief, nor did he cite any authority in his motion.

### A. Vehicle Search

As set forth above, Officer Muhlenbruch responded to the scene of a reported threat. It is undisputed that Defendant matched the description of the person allegedly making the threat. When Muhlenbruch got out of his squad car and attempted to get Defendant's attention, Defendant nonetheless entered a parked car and shut the door. Muhlenbruch proceeded to the side of the vehicle, where he observed Defendant making suspicious movements. Muhlenbruch recognized Defendant, and knew his criminal history included carrying weapons and involvement in a homicide. Accordingly, Muhlenbruch directed Defendant to put his hands up and exit the vehicle. Muhlenbruch then handcuffed Defendant and patted him down for weapons, but found none.

---

[3] Surprisingly, Officer Muhlenbruch did not discover the cell phone when he patted Defendant down for weapons. Muhlenbruch testified that he first learned Defendant possessed a cell phone when Defendant received a call while being transported to jail.

At the time of hearing, Defendant's counsel conceded that none of the actions described above violated the Constitution. That is, Defendant agrees that Muhlenbruch was conducting a valid *Terry* stop.[4] Police may conduct a brief investigative stop when they have reasonable, articulable suspicion that criminal activity may be afoot. *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010). Here, law enforcement received credible information that a subject had told bar employees that he was "going to do something to someone" when the bar let out. Club 319 has a very high call volume for higher risk calls, such as fights, shootings, and stabbings. In addition, the area was known to officers as a high crime area. Defendant, who matched the description of the person making the threat, was seen nearby. Under these circumstances — as Defendant concedes — Muhlenbruch had reasonable, articulable reasons to conduct an investigative stop.

After Defendant was directed to get out of the car, Officer Muhlenbruch patted him down for weapons. Defendant concedes that this was also permitted under *Terry*. "Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have objectively reasonable suspicion that a person with whom they are dealing 'might be armed and presently dangerous and criminal activity might be afoot.'" *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012) (quoting *United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011)). Here, Defendant matched the description of a person who threatened to "do something" after the bar closed. Muhlenbruch recognized Defendant and knew his criminal history included carrying weapons and involvement in a homicide. Defendant concedes that under these circumstances Muhlenbruch was authorized under *Terry* to conduct a protective pat-down of Defendant's person.

"An investigative stop must be limited in scope and manner to satisfy the requirements of *Terry*." *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004). Given the "endless variations in facts and circumstances" of police-citizen encounters,

---

[4] *See Terry v. Ohio*, 392 U.S. 1 (1968).

there is no simple test to determine whether an officer's actions exceed the scope permitted by *Terry*. *Id.* When officers are presented with a serious danger in the course of the investigative stop, however, "they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *Id. See also United States v. Bell*, 480 F.3d 860, 864 (8th Cir. 2007) ("During any investigative stop, 'officers may take steps reasonably necessary to protect their personal safety.'") (quoting *United States v. Shranklen*, 315 F.3d 959, 961 (8th Cir. 2003)). Given the nature of the call, the time of night, the high crime area, the fact that Muhlenbruch was alone, Defendant's suspicious movements, and Defendant's criminal history, Muhlenbruch was justified in brandishing his weapon and handcuffing Defendant prior to the pat-down.

After Defendant was patted down and no weapon was found, Defendant was taken in handcuffs and placed in the back of Officer Muhlenbruch's squad car. Muhlenbruch then returned to the parked car and searched the passenger compartment where Defendant had been sitting. It is apparently these actions which Defendant argues violated the Fourth Amendment.

In conducting a *Terry* stop, officers must use "the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop." *United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010) (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). "However, as part of a lawful *Terry* stop, officers may take any measures that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *Id.* (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). For the reasons set forth above, Officer Muhlenbruch was justified in placing Defendant in his squad car to protect the status quo, while the investigatory stop was on-going.

In *Michigan v. Long*, 463 U.S. 1032 (1983), the Court addressed the issue of whether a protective search of the passenger compartment of a motor vehicle during an investigatory stop was reasonable. There, officers conducted a protective search of the passenger compartment before the driver was placed under arrest. The Court held that such a search "was reasonable under the principles articulated in *Terry* and other decisions of this Court." *Id.* at 1035.

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21).

Here, officers received information from a bar employee that a subject told employees he was "going to do something to someone" when the bar let out. Club 319 has a history of fights, shootings, and stabbings, and is located in a high crime area. It was late, there were only two officers on the scene, and the officers knew that Defendant had a criminal history involving weapons. When Officer Muhlenbruch initially arrived on the scene, Defendant seemingly ignored him in an effort to get to the parked car. While Defendant was sitting in the parked car, Muhlenbruch observed him making suspicious movements. Given the totality of the circumstances, including rational inferences which could be drawn from those facts, Muhlenbruch was justified in believing that Defendant was dangerous and may gain control of a weapon if released back to the car. Accordingly, a search of the passenger compartment was authorized under *Long*. *Id.*

It should be noted that when Officer Muhlenbruch initially searched the passenger compartment where Defendant had been sitting, Defendant was *not* under arrest. Indeed, Muhlenbruch did not have probable cause to arrest Defendant at that time. However, as

noted by the Court in *Long*, an officer remains particularly vulnerable when a suspect has not been arrested because the suspect may reenter the vehicle upon release and have access to any weapon inside. *Id.* at 1051-52. This case is distinguishable from *Arizona v. Gant*, 556 U.S. 332 (2009), where the defendant was arrested and placed in the back of the squad car. Under those circumstances, because the suspect would not be released, he no longer posed a threat to the officers and, therefore, a search of the passenger compartment was not authorized. *Id.* at 351. In his concurring opinion, however, Justice Scalia made it clear that the holding in *Gant* did not affect the Court's prior holding in *Long*.

> It must be borne in mind that we are speaking here only of a rule automatically permitting a search when the driver or occupant is arrested. Where no arrest is made, we have held that officers may search the car if they reasonably believe "the suspect is dangerous and . . . may gain immediate control of weapons." (citing *Long*) **In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.** The rule of *Michigan v. Long* is not at issue here.

*Gant*, 556 U.S. at 354 (Scalia, J., concurring) (emphasis added).

The Eighth Circuit Court of Appeals recognized the continuing validity of *Long* in *United States v. Stewart*, 631 F.3d 453 (8th Cir. 2011). There, a deputy sheriff stopped a subject at 3:30 a.m. to investigate suspicious activity. The subject was instructed to exit the vehicle and was patted down for weapons. After the subject had been placed in the back of a squad car, the deputy entered the subject's vehicle "and searched the immediate area around the driver's seat for weapons." *Id.* at 455. In finding the search was not violative of the Constitution, the Court noted that "*Gant* left the holding in *Long* untouched." *Id.* at 457 (citing *United States v. Goodwin-Bey*, 584 F.3d 1117, 1120 (8th Cir. 2009)).

> The fact that Stewart accompanied Deputy Stehlik to one of the police cruisers while Deputy Woodward conducted the

9

protective search of his vehicle does not alter this result. "Where an officer has temporarily removed a suspect from his vehicle, but is not planning to arrest him, the officer is permitted to conduct a limited protective search of the vehicle before releasing a suspect to ensure he will not be able to gain immediate control of a weapon."

*Stewart*, 631 F.3d at 459 (quoting *United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008)).

In summary, I believe that Officer Muhlenbruch's actions were fully consistent with the Constitution. As Defendant concedes, he was authorized under the circumstances to conduct a *Terry* investigatory stop, which included removing Defendant from the vehicle and patting him down for weapons. Given the totality of the circumstances, Muhlenbruch did not exceed the permissible scope of an investigatory stop by placing Defendant in handcuffs and putting him in the back of his squad car while conducting a protective search of the passenger compartment of the vehicle.

### B. Defendant's Statements

After Defendant was placed in the back of Officer Muhlenbruch's squad car, he made multiple phone calls on his cell phone. Some of the statements made by Defendant in those phone calls are potentially incriminating. In his motion, Defendant argues that "his statements made while in custody, including in the patrol car, were taken under circumstances violative of his constitutional rights." Apparently because of Defendant's reference to statements "while in custody," the Government addresses *Miranda* in its resistance. At the time of hearing, however, Defendant's counsel argued that "the statements in the patrol car are fruits of the poisonous tree because he wouldn't have been in the patrol car had they not exceeded the scope of their necessary investigation."

As set forth above, I believe Officer Muhlenbruch did not exceed the permissible scope of an investigatory stop when he placed Defendant in the squad car. "[A]s part of a lawful *Terry* stop, officers may take measures that are 'reasonably necessary to protect

their personal safety and to maintain the status quo during the course of the stop.'" *Newell*, 596 F.3d at 879. It was late at night, there were only two officers on the scene, Officer Muhlenbruch had observed Defendant making suspicious movements while in the parked vehicle, and was aware that Defendant had prior convictions for carrying weapons. I believe that placing Defendant in the back of the squad car while the investigatory stop was on-going did not exceed the scope permitted by *Terry* and its progeny. In *Stewart*, the suspect was placed in the back of a squad car before the deputy conducted a limited protective search of the passenger compartment of the vehicle. The Court found that this was not violative of the Fourth Amendment. 631 F.3d at 459.

To the extent Defendant asserts some sort of *Miranda* violation, that argument also fails.[5] The protections afforded by *Miranda* only apply when a suspect is in custody and is being interrogated. *United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009). Here, Defendant was not being subjected to a custodial interrogation. The statements made in his phone calls were entirely voluntary. In fact, Officer Muhlenbruch testified that he did not even know Defendant had a cell phone until Defendant received a call while being transported to the jail. Defendant offers no authority for the proposition that statements made in a phone call voluntarily initiated by a person in custody are somehow inadmissible. I believe Defendant's argument in this regard should be rejected.

## VI. ORDER

For the reasons set forth above, IT IS RESPECTFULLY RECOMMENDED, that Defendant's Motion to Suppress (docket number 18) be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription*

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

11

*of all portions of the record the district court judge will need to rule on the objections."*
*Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on October 14, 2014.*

DATED this 17th day of October, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA